IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LACIE PETERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AVALON CARE CENTER – VA PAYSON, LLC, a Utah Limited Liability Company,<br><br>Defendant. | MEMORANDUM DECISION & ORDER SUSTAINING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER [Dkt. No. 27]<br><br><br><br>Case No. 2:15-CV-671<br>Judge Dee Benson |

This matter is before the Court on objections filed by defendant Avalon Care Center – VA Payson, LLC, ("Avalon Payson" or "defendant") to an order entered by Magistrate Judge Wells (Dkt. No. 27), addressing discovery motions.  (Dkt. No. 28, Def.'s Obj.)  Pursuant to DUCivR 72-3, plaintiff Lacie Peterson responded to defendant's objections and defendant Avalon Payson replied.  (Dkt. Nos. 30 & 31, respectively.)  For the reasons that follow, defendant's objections are sustained.

**BACKGROUND**

In this lawsuit, Plaintiff alleges sexual harassment and retaliation in violation of federal

1

and state anti-discrimination laws.  More specifically, Plaintiff alleges that while working for Defendant Avalon, she was sexually harassed by the Maintenance Supervisor, retaliated against, and placed on administrative leave.  Plaintiff further alleges in the First Amended Complaint, that as a result of an internal investigation, approximately two weeks after she was placed on administrative leave, Defendant Avalon "reversed their position and unconditionally reinstated Peterson, announced that [the Maintenance Supervisor] had been fired, expunged Peterson's employment record, and enclosed payment for back pay to cover the period of her unjust suspension."  (Dkt. No. 4, Am. Compl. ¶ 58.)   In other words, Plaintiff was unconditionally invited to return to work with back pay for the work time while on administrative leave.  (Id.)

Within a few days of Defendant Avalon's offer of unconditional reinstatement, Plaintiff and her attorney, Steve Sumsion, attended a return-to-work meeting between Plaintiff and Avalon's human resources representative and in-house counsel.  The stated purpose was to provide an opportunity for Plaintiff to "express her concerns and ask any questions she might have before returning to work."  (Dkt. No. 28-3, Meeting Report at 1.)  Plaintiff's counsel, Mr. Sumsion, did most of the talking during the meeting, and at the conclusion of the meeting asked: "Will you give us until tomorrow at noon to make a decision about Ms. Peterson returning to work?"  (Id. at 4.)

Ultimately, Plaintiff rejected the offer, refused to return to work and was terminated as a result.  Following her termination, Plaintiff filed a charge of discrimination with the Utah Labor Commission, received a right to sue letter, and filed this lawsuit.  In Plaintiff's First Amended Complaint she expressly alleges that she made the decision to reject Defendant's offer of

unconditional reinstatement and refused to return to work "[o]n the advice of her attorney." (Dkt. No. 4, Am. Compl. ¶60.)  Defendant Avalon then affirmatively pleaded in its Answer that Plaintiff failed to mitigate her damages.  (Dkt. No. 5, Answer at 9.)  Avalon also listed Mr. Sumsion as a fact witness in its initial disclosures.  (Dtk. No. 28-4.)

Because Plaintiff specifically alleged that she relied on counsel when she refused Defendant Avalon's offer of reinstatement, and because Plaintiff's refusal to return to work resulted in what Defendant claims was a failure to mitigate damages, Defendant sought to depose both  Plaintiff and Plaintiff's counsel, Mr. Sumsion.

On February 29, 2016, Plaintiff was deposed and asked why she refused Avalon's offer of reinstatement.

> Q (Avalon's Counsel): When you first got this offer of unconditional reinstatement, Peter Sabey said clean slate, same pay, we fired the person you complained about, you have a new director of maintenance, your first instinct was to say, okay, great I'd like to have my job back?
>
> A (Ms. Peterson): Only under certain requirements that my attorney could be in contract with Avalon.  Does that make sense?  We wanted to draw up a contract with them to protect me from further harassment from Shauna Kraus.
>
> Q (Avalon's Counsel): And then upon the advice of your attorney, did you refuse to take the offer of unconditional reinstatement?
>
> Mr. Worthy: I object to that again if it's seeking attorney-client communications.
>
> Q (Avalon's Counsel): I am not seeking attorney-client communications, but this is – I'll quote the complaint.  On the advice of her attorney, she did not go back to work or accept the check until such negotiations had occurred in good faith and was terminated as a result.
>      So do you agree that the reason you didn't take the unconditional offer of reinstatement was because of the advice of your attorney?
>
> A (Ms. Peterson): Well, I don't know.

> Mr. Worthy: I object because this has also been asked and answered.
>
> Q (Avalon's Counsel): What don't you know?
>
> A (Ms. Peterson): What the question is.
>
> Q (Avalon's Counsel): My question was, is it true – and I am just reading from the complaint that was filed, is it true that on the advice of your attorney, you did not go back to work or accept the check until such negotiations occurred in good faith and that you were terminated as a result?
>
> A (Ms. Peterson): I don't know how to answer that.
>
> Q: What's not clear?
>
> A: Well, me and my attorney spoke about it.  He wasn't just telling me what to do, he was listening to me as well.
>
> Mr. Worthy: I object if his question is seeking attorney-client communications.  You don't have to tell him about attorney-client communications.
>
> Q (Avalon's Counsel): You can answer the question.  Just is it true or not that – so the letter we're looking at, Exhibit 14, is an unconditional reinstatement of Lacie Peterson.  You had a meeting saying you can come back, here's your back pay, and you, upon the advice of counsel, decided not to come back.
>
> A (Ms. Peterson): I don't know.  I don't know how to answer that.

(Dkt. No. 28-2, Lacie Peterson Depo., at 137- 39.)

Because the parties continued to disagree whether the attorney-client privilege on this subject matter had been waived, Defendant Avalon left the deposition open.  (Id. at 152.)

Thereafter, on April 6, 2016, Plaintiff filed a Motion for Protective Order seeking to shield conversations between Plaintiff and her counsel, Mr. Sumsion, about the reasons she rejected the unconditional offer of reinstatement and refused to return to work.  Specifically, Plaintiff's Proposed Protective Order sought to prohibit Defendant Avalon "from seeking details

regarding private communications that [Plaintiff] had with her attorney, Steven R. Sumsion, as to whether she should have returned to work after Avalon's offer of unconditional reinstatement to her on or about August 29, 2013." (Dkt. No. 20-2, Protective Order [Proposed].)

Plaintiff did not, however, move to prohibit Avalon from deposing Mr. Sumsion regarding non-privileged matters, such as the return-to-work meeting, and Mr. Sumsion appears to have agreed to be deposed on non-privileged topics. (See Id.; Dkt. No. 28-5, E-mail Exchange Between Sumsion and Castleberry, dated May 3, 2016.) In an e-mail exchange between counsel, Mr. Sumsion requested to postpone his deposition until after the court ruled on the Motion for Protective Order to avoid being deposed twice – once about the return-to-work meeting and again after the court had ruled about the attorney/client communications regarding why Plaintiff refused to return to work. As a professional courtesy, Avalon agreed to postpone Mr. Sumsion's deposition. (Id.)

On June 7, 2016, the magistrate judge granted Plaintiff's Motion for Protective Order. In doing so, the magistrate judge concluded that Plaintiff's conversations with her counsel, Mr. Sumsion, were protected by the attorney client privilege because neither the at-issue nor the subject matter waiver doctrines applied, and "further prohibited" Avalon from deposing Mr. Sumsion for any reason. (Dkt. No. 27, Protective Order at 4.)

Avalon objected to the magistrate judge's order on the following grounds. First, Avalon argues that the Protective Order is in error because the scope of the Order exceeds the relief sought by Plaintiff. Second, Avalon argues the Order erroneously concludes that issues placed in the lawsuit via the allegations of Plaintiff's Amended Complaint are immune from question.

Stated another way, Avalon asserts that it should be permitted to depose Plaintiff's counsel not only as to the non-privileged content of the return to work meeting, but also about the advice he gave to Plaintiff given that Plaintiff inserted the "advice of counsel" as an issue in the lawsuit.

## DISCUSSION

Upon objection, this Court reviews an order by a magistrate judge on a non-dispositive matter to determine whether the decision is "clearly erroneous or contrary to law." 28 U.S.C. 363(b)(1)(A); see also Fed.R.Civ.P. 72(a) (stating that upon receipt of timely objections, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law"). A decision is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Company, 333 U.S. 364, 395 (1948). As stated previously, Avalon objects to the magistrate judge's blanket ruling prohibiting Avalon from deposing Mr. Sumsion for any reason whatsoever, and Avalon objects to the magistrate judge's ruling that the "at-issue" and subject matter waiver doctrines do not apply. Having reviewed the record before the court, Avalon's objections are sustained.

### 1. The Magistrate Judge Erred by Granting Relief Not Requested by Plaintiff

On the issue of whether Avalon could depose Mr. Sumsion for *any* purpose – including inquiry into non-privileged communications such as the return-to-work meeting – the magistrate judge's Order does not provide any rationale or explanation. It simply states: "Avalon is further prohibited from deposing Peterson's counsel, Mr. Sumsion." (Dkt. No. 27, Order at 4.)

Whether Plaintiff's counsel could be deposed *for any purpose* was beyond the scope of the relief requested by Plaintiff in Plaintiff's motion and Proposed Order. As previously explained, the Plaintiff's Proposed Protective Order specifically requested that Avalon be prohibited "from seeking details regarding private communications that [Plaintiff] had with her attorney, Steven R. Sumsion, as to whether she should have returned to work after Avalon's offer of unconditional reinstatement to her on or about August 29, 2013." (Plaintiff's Proposed Protective Order, Dkt. No. 20-2.)

Notably absent from Plaintiff's motion and proposed order was any request by Plaintiff to prohibit Avalon from deposing Mr. Sumsion with regard to any non-private conversations concerning the right-to-work meeting. Having chosen to participate with Ms. Peterson in the human resources return-to-work meeting after Avalon offered her an unconditional return to work, Mr. Sumsion exposed himself to the possibility of becoming a fact witness in this case. And, as set forth in detail above, Mr. Sumsion appears to have agreed to being deposed on such non-privileged topics. (Dkt. No. 28-5, Attachments to Def.'s Obj. To Magistrate Order, Email exchange between Steven Sumsion and David Castleberry, dated May 3, 2016, agreeing to postponement of deposition on non-privileged information until after ruling on potentially privileged information.) Moreover, as Avalon points out in their Objection to Magistrate Order, Plaintiff's counsel has "noticed" the deposition of Avalon's corporate counsel, Peter Sabey, who, like Mr. Sumsion, attended the return-to-work meeting. It seems patently unfair to permit Plaintiff to depose all of those present at the return-to-work meeting and deny the same to Avalon.

Accordingly, the court finds the magistrate judge clearly erred in prohibiting Avalon from deposing Mr. Sumsion for *any* reason, where such relief was beyond the scope of the Plaintiff's Proposed Order and contrary to the understanding and agreement of the parties.

### 2. The magistrate judge erred in concluding that the attorney-client communications are not "truly 'at issue' in the litigation"

In granting Plaintiff's Motion for Protective Order and concluding that the "at-issue" waiver did not apply, the magistrate judge explained the reason as follows: "Defendant has failed to convince the Court that the privileged correspondences are truly 'at issue' in the litigation especially because Plaintiff has agreed not to introduce any evidence regarding advice of counsel at trial." (Dkt. No. 27, Order at 3.)

As an initial matter, the court is unaware of any agreement wherein Plaintiff has agreed to not introduce any evidence regarding the "advice of counsel" at trial. To the contrary, paragraph 60 of Plaintiff's First Amended Complaint contains the express allegation: "On the advice of [Plaintiff's] attorney, she did not go back to work." (Dkt. No. 3, ¶60.) Additionally, Avalon's attempts to obtain a written stipulation from Plaintiff that she will not refer to the "advice of counsel" during trial have been unsuccessful to date. (Dkt. No. 28, at 11 n.2.)

It is well-established that a party may waive the attorney-client privilege by placing attorney client communication at the heart of a case. A direct allegation in a pleading that one has relied on the advice of counsel suffices to "affirmatively place at issue" the advice of one's attorney. See Seneca Ins. Co. v. Western Claims, Inc., 774 F.3d 1272, 1276 (10th Cir. 2014). Under the at-issue doctrine, otherwise privileged information is discoverable if three elements are met: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by

the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense." Seneca, 774 F.3d 1276.

The court finds that all three elements have been met here. Plaintiff affirmatively put the advice of her attorney at issue by alleging in the First Amended Complaint that "[o]n the advice of her attorney, she did not go back to work." (Dkt. No. 3, ¶60.) As a direct result of the allegations in the First Amended Complaint, Avalon asserted the defense of failure to mitigate damages. As such, the reasonableness of Plaintiff's decision to refuse Avalon's offer of unconditional reinstatement is both relevant to the case and vital to Avalon's mitigation of damages defense.

Plaintiff's assertion that the information is not "vital" because it is available from other sources misses the point, particularly in this case where the magistrate judge did not make such a finding. Based on the information presently before the court, it appears that only Plaintiff and her counsel, Mr. Sumsion, have personal knowledge of the substance of Mr. Sumsion's advice that Plaintiff should refuse to return to work after the offer of reinstatement. Although other individuals and employees may have attended the return to work meeting, they do not have personal knowledge related to Mr. Sumsion's advice to Plaintiff regarding her decision.

To allow Plaintiff to rely on "advice of counsel" as the basis for her decision to refuse to return to work, but then exclude the contents of that advice would violate the well-established principle that attorney-client communications cannot be used both as a sword and a shield.

Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges, § 6.12.4 (2014) (noting thrust of "at issue" doctrine is that party's privilege cannot be used as both shield and sword).

By affirmatively alleging in the First Amended Complaint that she refused to return to work "on the advice of her attorney," and because the reasonableness of plaintiff's refusal to return to work is both relevant and vital to this case, Plaintiff has sufficiently placed her counsel's "advice" at issue in this litigation. Avalon is therefore entitled to discovery of that advice in order to determine the reasons Plaintiff refused Avalon's offer. Absent such evidence, Avalon will be unable to present a full defense regarding mitigation of damages.

Accordingly, the Court finds the magistrate judge's conclusion that the "advice of counsel" was not "truly at issue in the litigation" was contrary to law and clearly erroneous.

It is therefore ordered that Defendant's Objections are sustained.

DATED this 6th day of October, 2016.

_____
Dee Benson
United States District Judge